## ARGUED AND DETERMINED

### IN THE

# SPUREME COURT OF IOWA.

---

## JANUARY TERM 1844.

Hon. CHARLES MASON, Chief Justice.
" JOSEPH WILLIAMS, } Associate Judges.
" THOMAS S. WILSON, }

---

## Ansel Humphreys, *vs.* Denton J. Snyder.

### *Appeal from Muscatine.*

An agreement between A. and B. that A. is to execute a mortgage to B. (as soon as he pays for and obtains a title to a lot) to secure the payment of a debt due to B., is not to be treated as a mortgage.

This was a bill in chancery filed by Humphreys vs. Snyder, in the District Court of Muscatine, on the 30th day of April, 1842, to foreclose a mortgage, and at the June term a decree was rendered for the complainant.

The facts are sufficiently stated in the opinion of the court.

R. P. Lowe, for complainant.

Hastings & Richman, for defendant.

PER CURIAM, WILLIAMS, JUSTICE.—The bill filed in this case, sets forth, that Snyder the respondent, on the 26th of August, 1840, was indebted to the firm of Eno & Phelps, of the city of New York, in the sum of $610,31, and had at the same time an equitable interest in lot no. 1, block no. 33, in the town of Bloomington, with a dwelling and store house situate thereon; that to secure the payment of the sum of money aforesaid the following article of agreement was entered into, to wit:

"This article of agreement, made this 26th day of August, one thousand eight hundred and forty, between Denton J. Snyder of Bloomington, in the Territory of Iowa, Eno & Phelps of the city and State of New York and Ansel Humphreys of Bloomington aforesaid, as follows, to wit:

"Whereas, said Snyder as member of the firm of D. J. Snyder & Co., is indebted to Eno & Phelps in the sum of six hundred and ten dollars thirty-one cents, and whereas, said Snyder is the owner of a certain lot in Bloomington, with the buildings and improvements thereon, which said lot is now occupied by the dwelling house and store of said Snyder, and is known as lot no. one, of block thirty-three, in the village plat of said town of Bloomington; and whereas, a deed for the same will be due said Snyder from the commissioners, or committee for the county of Muscatine, on the payment, by said Snyder, of the sum of forty-four dollars, which payment will fall due on or before the fifteenth of September next ensuing. The said Snyder hereby agrees for himself, his heirs and assigns, and hereby does assign, to the said Ansel Humphreys, in trust, and as agent for said Eno & Phelps, all his right, title and interest to said property, for the security of the payment of said six hundred and ten dollars thirty-one cents, to said Eno & Phelps with the interest thereon. The said Humphreys for himself, his heirs and assigns hereby agrees to release and re-assign the premises above described, to said Snyder, provided, that on or before the fifteenth day of September next ensuing, he, the said Snyder, shall pay the balance due on said lot, and shall immediately make application for a deed, and by consent of said Humphreys shall procure the same and shall thereupon cause and execute a mortgage on said premises, to said Eno & Phelps, for the payment of said sum of six hundred and ten dollars thirty-one cents aforesaid, with the interest thereon at seven per cent. Said mortgage to be made payable and due on the twenty-sixth day of February eighteen hundred and forty-two.

"And it is especially agreed by said Snyder for himself, his heirs,

executors and assigns, that no building or buildings, shall be removed from said premises by himself, or by any person with his consent. And the said Eno & Phelps for their executors, heirs and assigns hereby agree to wait said time of payment, in consideration of the fulfilment by said Snyder of the conditions hereby entered into by him, and will allow the said Snyder the occupancy of said premises for the term of said mortgage.

" And in case said Snyder does not pay said amount of forty-four dollars to the commissioners as aforesaid, so as to authorize them to execute a deed, or in case he refuses to execute a mortgage as aforesaid, or in case any of the conditions of said Snyder are not fulfilled, then the said Humphreys is authorized and hereby engages to dispose of said property under the direction of said Eno & Phelps, for the payment of said debt, or so much as it may pay thereon; and the balance, after paying necessary costs and expenses, to be paid, if any such balance shall remain, to said Snyder. In witness whereof we have hereunto affixed our hands and seals at Bloomington, in the Territory of Iowa, this twenty-sixth day of August, 1840.

": D. J. SNYDER, [L. S.]

" ENO & PHELPS, [L. S.]

" By JOHN JAY PHELPS, one of the firm.

" ANSEL HUMPHREYS, [L. S.]

" In presence of

" LUCIA ANN HUMPHREYS,

" JAMES A. HUMPHREYS."

Upon the day of the execution of said instrument, it was duly acknowledged by said Snyder, and recorded in Muscatine county; and thereupon said Eno & Phelps made an assignment of the same, to wit:

" We hereby transfer and assign to Ansel Humphreys our interest in the debt described within, together with the security thereon. The said Snyder having this day payed to us one hundred and twenty dollars thereon, per our receipt to him, which amount is to be deducted. The same, after said deduction, to be held by said Humphreys, for his own use and benefit, and at his own risk and responsibility, and we hereby relinquish all interest in the same.

" ENO & PHELPS.

" Bloomington, August 26th, 1840."

The plaintiff claims that by said assignment, he became the sole owner

34

of the interest in said debt, and entitled to the benefit of the aforesaid security, and that thereby the character of trustee in which he formerly stood to the said Eno & Phelps, was annulled and destroyed. The complainant also charged that the said Snyder, although he had procured a title to the said lot, from the commissioners of the county of Muscatine, had not performed the other part of the agreement, nor did he pay the money due the said Eno & Phelps in accordance with the stipulations of said agreement. By reason of which said failure on the part of the said Snyder, to comply with all of the conditions of said agreement, the complainant claims that he holds a lien on said premises to the amount of the balance due, after deducting the payment made by said Snyder, and acknowledged by the assignment of said agreement to the complainant, by the said Eno & Phelps, dated August 26th, 1840, together with the stipulated rate of interest, and that he is entitled to a decree of this court for the sale of said premises to satisfy the same. The bill was taken *pro confesso*, for want of an answer after rule taken against defendant to answer by a day certain.

In considering this case, three questions present themselves, viz :

1. What were the undertakings of the different parties to the agreement?

2. Which of the undertakings have not been performed?

3. What decree or order should the court below have made in the premises?

This last question will involve the legal consideration of the agreement.

In considering the first question, we will inquire into the undertakings of the different parties separately, and in the order in which their names are affixed to the agreement.

What was Snyder to do?

1. He assigned all of his interest in the property mentioned, to Humphreys IN TRUST and as agent for Eno & Phelps, for the security of the payment of the sum of $610,31, with interest.

2. He agrees to pay to the commissioners of Muscatine county, on or before the 15th of September, then next ensuing, (1840) the sum of $44, the balance due to said commissioners for this lot; which sum it was necessary that Snyder should pay in order to procure a deed in fee simple for the premises, and to make application to such commissioners for such a deed, and by consent of Humphreys to procure the same, and upon procuring a deed and upon Humphreys re-assignment of the property to himself to execute a mortgage of said premises to said Eno &

Phelps, for the sum of $610,31, with interest at seven per cent; said mortgage to be made payable and due on the 26th of February, 1842.

3. Snyder agrees not to remove any of the buildings from the lot.

4. In case of a failure on his part to pay the amount of $44 to the commissioners as aforesaid, so as to authorize them to execute a deed, or in case he refuses to execute a mortgage as aforesaid, or in case any of the conditions of him, the said Snyder, are not fulfilled, he authorizes Humphreys to dispose of the property, under the directions of Eno and Phelps, for the payment of said debt; and to pay the residue after payment of costs, expenses &c., to himself, (Snyder.)

What did Eno and Phelps agree to do?

They agree to wait till the 26th of Feb. 1842, for the payment of the money; and to allow Snyder the occupancy of the premises for the term of said mortgage.

What did Humphreys agree to do?

He is to act in the character of trustee and agent; to re-assign the premises to Snyder, provided Snyder shall make the payment to the commissioners, and thereupon execute the mortgage as aforesaid. He agrees, also, in case of a failure on the part of Snyder to pay the amount of $44 to the commissioners, or in case Snyder should *refuse* to execute the mortgage aforesaid, or in case any of the conditions of him, the said Snyder, are not fulfilled, to dispose of the property under the directions of Eno & Phelps, for the payment of the debt and to pay the residue, after the payment of costs, expenses &c., to Snyder.

In proceeding to consider the second question, viz: which of the undertakings have not been performed, it will be necessary to advert to the allegations of the bill. The bill charges, "that although the said Snyder has procured from the commissioners aforesaid a title in fee simple of the same, he has not performed the other conditions and stipulations of his agreement, nor has he paid the said sum of money specified in the said instrument on the 26th day of February, 1842, agreeably to his undertakings. We infer from the bill that Snyder paid the $44,00 to the commissioners and procured the title pursuant to the agreement, and that none of the buildings were removed from the lot as the bill alleges, that he procured the title; and there is no complaint of a failure in these particulars. What other undertakings not performed will authorize the sale of the property? A refusal to execute the mortgage. There is no allegation in the bill that there was a refusal to execute the mortgage; no allegation of demand of a mortgage. Snyder does not authorize Humphreys to sell the property in case he

(Snyder) does not make and execute the mortgage. The mere non-performance in this particular is not the contingency which the article of agreement contemplates; it is the refusal which pre-supposes a demand from the other party. But the great error into which the complainant seems to have fallen is this: He has looked upon the agreement as authorizing the sale of the property in case of the failure on the part of Snyder to pay the money on the 26th of February 1842, and he sets forth the non-payment as the ground for asking the court to decree a sale, whereas there is no undertaking on the part of Snyder in this agreement to pay this money; but as we before mentioned, he only agrees to perfect the title in himself; not to remove the buildings, and upon the perfection of the title in himself not to refuse to execute the mortgage. It was the mortgage which secured the payment of the money.

We will now proceed to consider the third and last questions, which is; what decree or order the court should have made in the premises?

This article of agreement is not a mortgage, although upon certain contingincies it was to be a deed of trust. The court below in entering the decree considered it a mortgage. In the decree of the court the following language is used: "It appearing to the satisfaction of the court that the said mortgage was given by the defendant to secure the payment to the plaintiff of $610,31, with interest at the rate of seven per cent. per annum, and it appearing that there is now due from the defendant to the plaintiff, including interest to this day, the sum of $553,41, it is therefore ordered and decreed," &c. The non-payment of the money and the amount due were the only matters found by the court. The only grounds of the decree.

These facts do not authorize a decree of sale of the property.

Being of the opinion that the bill of itself does not show sufficient equity, and that if the matters therein set forth were admitted to be true, that the court would not be authorized to decree a sale, we do not deem it necessary to examine any other objections presented in the case.

The decree of the court below is reversed.